IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

- - -

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
vs.                                )   CRIM. NO. 18CR0030
                                   )
PAUL GIRARD, SHAQUAN PRENTICE,     )
ROBERT BROWN, WAHILLI JAMES,       )
SHAQUIELLE CORREA, JAMES CRUZ,     )
KAREEM HARRY, TYLER EUGENE,        )
ETHERNEAL SIMON, SHERMYRA GUMBS,   )
and WAYNE BELLILLE,                )
                                   )
                Defendants.        )
_____)


REPORTER'S TRANSCRIPT

IN-CHAMBERS STATUS CONFERENCE

November 7, 2019

---

BEFORE:        THE HONORABLE CURTIS V. GOMEZ
               District Judge

APPEARANCES:   OFFICE OF THE UNITED STATES ATTORNEY
               **BY: GEORGE ANDREW MASSUCCO, AUSA**
               **MEREDITH J. EDWARDS, AUSA**
               5500 Veterans Drive, Ste. 260
               St. Thomas, VI 00802-6424

               (For the Government)




COURT REPORTER:    PERSHA STOUTT-WARNER, RMR
                   Official Court Reporter
                   Virgin Islands District Court
                   St. Thomas, Virgin Islands

**APPEARANCES CONT'D**

**ADRIANE J. DUDLEY, ESQ.**
**MALORIE DIAZ, ESQ.**
Dudley & Rich
5194 Dronningens Gade, Suite 3
St. Thomas, VI 00802
(*For Defendant Shaquan Prentice a/k/a Dangles*)

**RENEE MARIE ANDRE, ESQ.**
Law Office of Majorie Roberts, P.C.
P.O. Box 6347
St. Thomas VI 00804
(*For Defendant Robert Brown a/k/a Big Bully*)

**ALEX OMAR ROSA-AMBERT, ESQ.**
ROSA-AMBERT LAW OFFICES
MCS Plaza Building
225 Ponce De Leon Avenue
San Juan, Puerto Rico 00917
(*For Wahilli James a/k/a/ Dapa*)

**JASON GONZALEZ-DELGADO, ESQ.**
P.O. Box 191365
252 Ponce DeLeon Avenue, Ste. 400
Hato Rey, Puerto Rico 00918
(*For Shaquielle Correa a/k/a/ Shaq*)

**RICHARD F. FARRELLY, ESQ.**
BIRCH DeJONGH & HINDELS, PLLC
1330 Taarneberg
St. Thomas, VI 00802
(*For Defendant Tyler Eugene a/k/a Lucc*)

**MICHAEL JOSEPH LA ROCHELLE, ESQ.**
RICHARD DOLLISON, P.C.
5143 Palm Passage, Ste. B28-29
St. Thomas, VI 00802
(*For Defendant Etherneal Simon*)

**ALEXANDER GOLUBITSKY, ESQ.**
ALEXANDER GOLUBITSKY, P.C.
6501 Red Hook Plaza, Ste. 201
St. Thomas, VI 00802
(*For Defendant Wayne Bellille a/k/a Wizo*)

PROCEEDINGS:

[Matter called to order at 9:18 am.]

THE CLERK:  United States of America versus Paul Girard, et al.

THE COURT:  Good morning.  Let me thank everyone for making the accommodation and being available.  Before we go on the record, I thought we'd have a brief off-the-record status first.

[Off-the-record discussion.]

[Government excused at 9:51 am.]

[Off-the-record discussion continued with defense.]

[Recess at 9:59 am.]

[Matter resumed at 11:19.]

Okay.  So, what can we do with the logistical issue?  I think that's the primary thing.  Let me make sure we've got the folks on the line, we need to have on the line.  Who is here for Girard?

[No response.]

Alex, are you sitting in for Girard?

MR. ROSA-AMBERT:  Yes, sir.

THE COURT:  Okay.  Prentice?

MS. DUDLEY:  Dudley and Diaz.

THE COURT:  Brown?

MS. DUDLEY:  Dudley for Renee Andre.

THE COURT:  Okay.  James?

MR. ROSA-AMBERT:  I'm here, Your Honor, Rosa.

THE COURT:  Correa?

MR. GONZALEZ-DELGADO:  I'm here, Your Honor.

THE COURT:  Cruz?

[No response.]

All right, Alex, you're sitting in for Cruz.

MR. ROSA-AMBERT:  Yes, sir.

THE COURT:  Harry?

[No response.]

Alex, you're sitting in for Harry.

Eugene?

MR. FARRELLY:  Good morning, Your Honor.
Richard Farrelly on behalf of Tyler Eugene.

THE COURT:  Good morning.  Simon?

MR. La ROCHELLE:  Michael LaRochelle.

THE COURT:  And Gumbs?  Who's sitting in for
Gumbs?

[No response.]

Alex, you're sitting in for Gumbs?

MR. ROSA-AMBERT:  Yes, sir.

THE COURT:  Bellille?

MR. GOLUBITSKY:  Yes, Your Honor.  Alex
Golubitsky for Wayne Bellille.

THE COURT:  Okay.  Good morning, again.  Sorry
about the delay, Folks.  We had three other matters to

tend to before I got back here.  All right.

As I understand, the government says that there are going to be two pleas this month.  Is that right, Attorney Massucco?

MR. MASSUCCO:  I'm sorry, Your Honor?

THE COURT:  You said there will be two pleas this month?  You said before December.

MR. MASSUCCO:  I said we will have formalized agreements in writing by December.  Yes, Your Honor.

THE COURT:  Okay.  Earlier I thought you said before December.  All right.  So, in December what's going to happen?

MR. MASSUCCO:  We're going to have signed plea agreements before December for two defendants.

THE COURT:  Before December?

MR. MASSUCCO:  Yes.  Well, by November 30th midnight, or December 1st.

THE COURT:  All right.  So, if that occurs, then your numbers will be nine.  All right.

And the government's suggestion is to try this, if it were to be split with who?

MR. MASSUCCO:  Your Honor, our suggestion is to try this as one case.  If you look at Rule --

THE COURT:  Okay, beyond that.

MR. MASSUCCO:  Okay.  But that's our principal

suggestion, that there is --

THE COURT:  Understood.

MR. MASSUCCO:  For the judicial economy and for the --

THE COURT:  Don't repeat yourself.  I understand.

MR. MASSUCCO:  I know.  But when I said it before, I was not on the record.  And now I'm on the record, so I'd like to make it clear for the record what our position is.

THE COURT:  Okay.  But tell me how you want to split it, if you want to split it.

MR. MASSUCCO:  If we were going to split this case, Your Honor, the only possible split that would not require us to do full blown, two full-blown trials would be to have Defendants 1, 2, 3 --

THE COURT:  No.  Tell me the names.

MR. MASSUCCO:  Paul Girard, defendant Number 1; Shaquan Prentice, Defendant Number 2; Robert Brown, Defendant Number 3; Shaquielle Correa, Defendant Number 5; James Cruz, Defendant Number 6; Karim Harry, Defendant Number 7; Tyler Eugene, Defendant Number 8; and Shermyra Gumbs, Defendant Number 10.

Because they all have murder charges and their involvement in the RICO is kind of sparse throughout, it

would make sense that those defendants would have to face the same evidentiary production by the government.

THE COURT:  So, you would have Gumbs, Billille and Simon separate?

MR. MASSUCCO:  That's not correct, Your Honor. It would be Simon, Bellille, and Wahilli James, Defendant Number 4.

THE COURT:  Oh, was Gumbs in your first line?

MR. MASSUCCO:  Yes, she was.

THE COURT:  All right, Gumbs.

MR. MASSUCCO:  Because she was connected to the murder of Germane Williams.

THE COURT:  So, the current split is -- I believe Gumbs is included in the split that's currently, that the Court presented, correct?

MR. MASSUCCO:  That is correct, Your Honor.

THE COURT:  Okay.  Defense want to be heard on that?

[No response.]

And if you're on the phone and you want to be heard, say your name and then you can be heard.

MR. GOLUBITSKY:  Are you asking for defense's input just on that proposed split of the trial?

THE COURT:  Correct.

MR. GOLUBITSKY:  Well, for Wayne Bellille, I

don't think we would have an objection to that.

THE COURT:  Okay.  Any other defense?

[No response.]

Okay.  So, the government's petition would be to remove Gumbs from the Court's split and put it into the larger group, as I understand it?  Okay.  We'll consider that.

MR. MASSUCCO:  That's actually not our petition, Your Honor.  Our petition is that this trial --

THE COURT:  Attorney --

MS. MASSUCCO:  -- has established --

THE COURT:  Attorney --

MR. MASSUCCO:  But, Your Honor --

THE COURT:  Attorney.

MR. MASSUCCO:  -- I'm trying to make a record.

THE COURT:  Attorney.

MR. MASSUCCO:  Yes.

THE COURT:  You will have a chance to make a record.

MR. MASSUCCO:  Okay.

THE COURT:  If you have to submit it in writing, that's fine.  But I'm not going to you have hijack this.

MR. MASSUCCO:  I'm not hijacking.  I'm simply

--

THE COURT:  All right.

MR. MASSUCCO:  -- trying to state what we stated before off the record --

THE COURT:  And you'll --

MR. MASSUCCO:  -- on the record.  It's my right to make a record, Your Honor.

THE COURT:  Attorney -- of course, you can make it however you choose to.

MR. MASSUCCO:  Well, I'd like to do that right now while we're all present.

THE COURT:  Well, when I give you an opportunity to do that, then you can do that.  And if I choose to do it by writing, you will do it by writing.

MR. MASSUCCO:  Well, then, I would like to summarize what we've spoke about before we were on the record --

THE COURT:  Attorney.

MR. MASSUCCO:  -- if I could.

THE COURT:  Attorney.  Attorney.

MR. MASSUCCO:  It's my right to summarize --

THE COURT:  Attorney Massucco --

MR. MASSUCCO:  -- on the record --

THE COURT:  Attorney Massucco --

MR. MASSUCCO:  -- what we discussed.

THE COURT:  Attorney Massucco, if you don't be quiet, you're going to be held in contempt.

Now, in terms of timing, what's the government's position on timing?

MR. MASSUCCO:  I think the first -- well, the first trial in this case, Your Honor, I discussed this with Counsel, and based on the -- some defendants have only seen one percent of the discovery that's been provided in this case.  We think that this trial should reasonably be set for trial no earlier than June 1st of 2020.

THE COURT:  All right.  Now, you mentioned discovery.  Tell me with discovery, what's the government's outstanding discovery?  What have you not provided to the defense?

MR. MASSUCCO:  What has not been provided, Your Honor, is some, I believe it's some Virgin Islands Territory Police reports or materials in connection with Virgin Islands investigations.  But not very much.  But largely connected with one particular, well, two particular events, one is the Osvaldo Graham carjacking, murder of Glen Williams.

THE COURT:  Tell me in terms of volumes what it is you have not provided to the defense?

MR. MASSUCCO:  I believe it's to the tune of

maybe 12 to 1500 files, which is not substantial in the overall picture of the case.

THE COURT:  Now, tell me, with those 12 to 1500 files, which ones have you had in your possession and which set, if you say you have recently acquired?

THE WITNESS:  Your Honor, a very small amount. I would say less than a hundred files have been recently acquired.

THE COURT:  Okay.  And the bulk of them, the other 1100 or 1400, when did you acquire those?

MR. MASSUCCO:  Sometime between January and April of this year, Your Honor.

THE COURT:  All right.  And from whom did you acquire them?

MR. MASSUCCO:  From the FBI.

THE COURT:  Okay.  So the government --

MR. MASSUCCO:  And the Virgin Islands Police Department.

THE COURT:  All right.  And tell me why you didn't provide those sooner?

MR. MASSUCCO:  Your Honor, because in January we filed a motion with the Court advising the Court that due to the size of this case, it should be considered to be called a complex matter.  We asked the Court to make a ruling as to complexity and take it outside the bounds

of the Speedy Trial Clock.  Because there are over, somewhere roughly 200 gigabytes of material, which involves hundreds of thousands of documents in this case, the United States is required to review each document by hand to make any redactions and make a determination of whether or not, in fact, it was discoverable.

We had just simply, physically, been unable to do that until, as of maybe 10:00 p.m. last night, when I finally reviewed this last batch of materials for production.

THE COURT:  So, you're saying the discovery that you had in January or, I think you said between January and April, you did not review that until, the 1500 or whatever the number is, you did not complete your review until yesterday?

MR. MASSUCCO:  Of these remaining documents, that is correct, Your Honor.

THE COURT:  So, as of June, what did you review of that group?

MR. MASSUCCO:  Since June --

THE COURT:  Did you review anything?

MR. MASSUCCO:  Your Honor, yes.  I can't tell you precisely what happened.

THE COURT:  When you reviewed the material, why

wasn't that turned over to the defense?

MR. MASSUCCO:  Because instead of doing it in onesies, twosies, Your Honor, it would be much more efficient rather than continuing -- because of the way the discovery is in this case and having them come and pickup the disc for eleven attorneys, it would be much more efficient to have them come at once when all of the materials have bee processed.

THE COURT:  Have you not given discovery in iterations?  Let me ask it another way.  You have been given discovery in iterations?  Yes or no.

MR. MASSUCCO:  To some extent, yes, Your Honor.

THE COURT:  Okay.  So, you weren't waiting until all of your review was complete.  Is that correct?

MR. MASSUCCO:  I'm not sure how to answer that question.  I just know that I completed this last review last night.

THE COURT:  My question is a little bit different than that, though.  You completed some review and you provided some discovery, correct?

MR. MASSUCCO:  That is -- honestly, Your Honor, I think we may have, but I don't know what the intermittent discovery --  I'd have to check.

THE COURT:  Have you provided discovery to defense?

MR. MASSUCCO:  Yes, we have, Your Honor.

THE COURT:  Okay.  Did you review it before you provided it?

MR. MASSUCCO:  Absolutely.

THE COURT:  Okay.  Is there a reason why you didn't hold off on providing that until all your review was complete?

MR. MASSUCCO:  Yes.  Because I wanted the defense to have something to look at in the preparation of this complex case.

THE COURT:  Okay.  The discovery that you completed your review of, I think you said last night?

MR. MASSUCCO:  Yes.

THE COURT:  Okay.  Did you -- when did you start that review?

MR. MASSUCCO:  It's been on and off throughout the summer, Your Honor.  I can't tell you specifically, but I've been looking at it for at least two months.

THE COURT:  For two months.  So, that would be from what?  This is the eleventh month, so from the ninth month?

MR. MASSUCCO:  From August, let's say.  From August to about now.

THE COURT:  Okay.  And did Judge Miller issue discovery production orders?

MR. MASSUCCO: Yes, she did.

THE COURT: Okay. Did you explain to the Court why you didn't provide the discovery that you had in your possession from earlier in the year?

MR. MASSUCCO: Yes. On multiple occasions, we explained to the Court this is an incredibly complex case where there are hundreds of thousands of documents, some of them, which would not be produced until we had properly reviewed them. I think we reviewed -- we discussed the discovery in this case since the onset, with our original filing that this is a complex case.

THE COURT: Okay. Since discovery is ongoing, though, are you not producing it as you review it? Or you decide when you're --

MR. MASSUCCO: To the extent we can, we do. And in this particular case, Your Honor, because much of evidence was linked to maybe a couple of incidents, it would have made sense to review all the information pertaining to that incident and release it at the same time as opposed to piecemealing it.

THE COURT: All right. Well, I think we're going to have to look into that, because I think then that way the government is driving it and making its own unilateral decisions on when it provides discovery, and I think that is something that the Court has concerns

with.  It's not only a problem in this case.  It's just about every single case that the United States is involved in there is piecemeal production and late-hour releases.  This case is one I don't think that's a good one to continue that practice in.  So, that's why the Court is asking those questions because it just seems part of the pattern and practice of the United States.  In this case, because of all the defendants involved here, it seems to me that we want to make sure the defendants get as much discovery as soon as possible, particularly, in light some of logistical problems.

So, I'm going to have the government file a document explaining how it's conducting its review, why it's not complying with the Court's deadlines.  Because I think Judge Miller issued her orders, and I don't think the Court is in a position where it wants to feel like its orders are suggestions or to be followed at the time and manner in which the government decides.  That's not how we run our cases.  So, you can have that, I guess, Monday by 3:00 p.m., you can file your document.

MR. MASSUCCO:  Your Honor, and I'd like to adopt my position in this meeting.  And I'm going to file a motion adopting the government's position, what I've stated on the record previous in this meeting.

THE COURT:  Well, of course.  Yes.  Anyone is

free to file whatever.  But my concern is, really, we have a discovery issue here.  And I really want the government to make sure that it uses as much due diligence as possible to make sure that defense are fully apprised.

All right.  I understand your petition with respect to carving or severing the case to the extent.  I understand your primary position is no severance.  I understand, also, that your wish is to set this for a trial date after June 20th.

MR. MASSUCCO:  After June 1st, Your Honor.

THE COURT:  After June 1, 2020.

MR. MASSUCCO:  Yes.

THE COURT:  So, I just want to make it very clear that the Court's position is the Court decides the time of the trial, not the government.  I appreciate the input.  And, certainly, if defense wishes to put in any input then they can certainly file.  But the Court's inclination, in light of the government's disclosures today, and certainly with respect to some of the logistical issues at Guaynabo, it seems that the Court will certainly consider promptly and seriously pushing off the set dates.  That's not to say that the dates have been moved, but the Court will seriously consider it and make a decision fairly promptly.

But I want the parties to know that when the Court issues an order, when the Magistrate issues an order it's not a suggestion.  So, I certainly hope that the government isn't proceeding on the assumption that it can do what it has done in just about every other case, which is decide when and how it chooses to provide discovery to defense.  In a case such as this, discovery has to be provided promptly and in accordance with court order, not with whim and decision of the United States.

So, my hope is that when the United States has information in its possession that it will make it available to the defense according to what the Magistrate directs.  And the Magistrate is involved in this case and, certainly, has dialogued with the parties on a far more frequent basis than the Court does and certainly sets her dates in a manner consistent with her understanding of what the government has.  So, hopefully we'll avoid any issues.

Now, does the defense have any suggestions on how the case would be severed, if it were to be severed?

[No response.]

All right.  I'll go down the line.  Girard?

[No response.]

I guess there is no one here for Girard.  Prentice?

MR. ROSA-AMBERT:  Your Honor --

THE COURT:  So that --

MR. ROSA-AMBERT:  I am here, Your Honor.

THE COURT:  Go ahead.

[No response.]

Whoever was on the phone that was speaking, who was that?

MR. ROSA-AMBERT:  It was me, Your Honor, Attorney Rosa.

THE COURT:  Rosa.  Go ahead, Attorney.

MR. ROSA-AMBERT:  I'm substituting for Mr. Girard.  I do not --

THE COURT:  Well, I don't want you to speak.  I just want you to report for those who are not here, not speak for them because I think, to be fair, they should be able to speak for themselves.

MR. ROSA-AMBERT:  Okay.  Perfect.

For Prentice, is anyone -- Prentice?

MS. DUDLEY:  Yes.  We have no statement to make with respect to the severance, Your Honor.

THE COURT:  Brown?

MS. DUDLEY:  No statement to make with respect to severance, Your Honor.

THE COURT:  James?  No one is here.

MR. ROSA-AMBERT:  Yes, Your Honor.  My position regarding severance is somewhat limited because I would

have to discuss the length of the discovery with my client to determine whether a severance is an option in his case.  So, as of today, I have no position on the matter.

THE COURT:  All right.  Correa?

MR. GONZALEZ-DELGADO:  Your Honor, Attorney Gonzalez.  We are in the same position as Mr. Rosa.  At this time I'm not in a position to answer the question.  I'm still waiting for whatever the government is going to provide in the next couple of days.  But I have been discussing it with my client, and he has been seeing the discovery.  So, we're working on it.

THE COURT:  All right.  Cruz?

[No response.]

Harry?

[No response.]

Tyler Eugene?

MR. FARRELLY:  Yes.  Good morning, Your Honor.  Do I understand the severance we're talking about now is Shermyra Gumbs would go into the second group?

THE COURT:  I think what the government has proposed is that the government would have -- currently the case is severed so that Gumbs is in with James, Bellille, and Simon.

MR. FARRELLY:  Right.

THE COURT:  And the government's proposal is that Gumbs be removed from that group of four so that the group of four will now be a group of three.

MR. FARRELLY:  Okay.  At this time, Your Honor, no position.  But I would talk to my client about that.

THE COURT:  Okay.

Bellille?  I think you already made your position clear.  Is that right, Attorney Golubitsky?

MR. GOLUBITSKY:  Yes, Your Honor.  Let me clarify that.  And I'm sorry.  I'm having a bit of trouble following what's going on in the courtroom while I'm on the phone.  But if I understand what the government has said, there is still some discovery which is outstanding.  Is that correct?

THE COURT:  Correct.  Yes.  The government says that -- I believe there are about 1500 files or so which the government had in its possession.  I think they had about 1100 or so of them in their possession as of April of this year.  I think the review may have been completed as of last night or thereabouts.  I'm not so sure.  But the record shows.

MR. GOLUBITSKY:  I see.  And the Court right now is asking for Bellille's position on the severance that the government proposed or the timing of the trial that the government proposed?

THE COURT:  Well, the severance.  That's all I want now, just the severance issue.

MR. GOLUBITSKY:  Okay.  So, to clarify our position on the severance issue, we have no current objection to proceeding as the government outlined, but we would reserve the right to make an objection once the additional discovery is reviewed.

THE COURT:  All right.

Attorney Massucco, when do you think that this discovery will be provided to the defense, the outstanding discovery?  And just so it's clear, I'm not so sure, because I know you were giving an estimate of, I forget how many files.

MR. MASSUCCO:  Yes, Your Honor.  I believe my paralegal, who is in charge of the discovery, who is out of the jurisdiction right now at a training, I think she can still do it.  And I was hoping maybe by tomorrow that we'll be able to -- I don't know is it's going in actually put in US-AFX, or if we're going to have hardcopies made -- I mean, a disc or something made available.  But my paralegal is working on that from South Carolina as we speak.  But certainly --

THE COURT:  So, let me ask the question again.  When is the government going to produce that outstanding discovery that you completed, the one that you completed

your review on?

MR. MASSUCCO:  Likely tomorrow.

THE COURT:  Tomorrow.

MS. MASSUCCO:  Yes.  But earliest next week at the latest.

THE COURT:  I'm not quite sure I understood that.  You said tomorrow, and then you said earliest next week.

MR. MASSUCCO:  Your Honor, because I haven't --

THE COURT:  Do you mean the latest next week?

MR. MASSUCCO:  I'm sorry.  The latest next week, yes.

THE COURT:  Oh, okay.  So, the earliest time would be tomorrow, but possibly next week.  But you're not sure when you'll provide it?

MR. MASSUCCO:  Well, I'm certain that no later than early next week.  But it is very likely that tomorrow it will be produced.

THE COURT:  Okay.  But you're saying the review -- just so the record is clear -- the review of that discovery is complete, correct?

MR. MASSUCCO:  It is complete.

THE COURT:  All right.  Okay.  Is there any other discovery?

MR. MASSUCCO:  Outside of Jenks and Giglio, I'm

unaware of any at this time.

THE COURT:  Okay.  I'm asking because I want to know if there is anything else in the government's possession, not the stuff that may be acquired from some third-party, but I'm talking about discovery that's in the government's possession.  For instance, the information that you referred to that's in the FBI's possession, is there any other evidence or discovery like that, that the government is holding onto?

MR. MASSUCCO:  I'm not aware of any at this time.

THE COURT:  Okay.  Is it -- just going back to this discovery, you had said that the government -- let me ask it this way.  Is there any other thing that would fall into that category of which you are aware or of which you think you need to inquire?

MR. MASSUCCO:  So you know, there is a very arcade filing system in the Virgin Islands Police Department, and sometimes there are records that aren't readably available and sometimes after, as you just mentioned, other cases that you've cited, Your Honor, sometimes these files or documents that aren't kept in the traditional electronic filing system that we experience in the federal system comes to light.  As soon as they come to light we actually make them

available.

But at this time, I can say with certainty that all of the evidence that we've received and all the documents we've received from the VIPD or the federal agencies, we have produced in discovery that are discoverable.  To the extent that something could come up in a case involving 19 predicate acts, 11 defendants over a six-year span of time, it's possible.  But at this point I don't have any information that there was such.

THE COURT:  My question was just for the stuff that's in your possession.  Like you said, there were FBI documents that were in your possession for the past seven months.

MR. MASSUCCO:  This discovery involves no FBI documents.  This discovery involves entirely VIPD case file information.

THE COURT:  When you say "this discovery," what are you --

MR. MASSUCCO:  This discovery that will be turned over tomorrow, no later than early next week.

THE COURT:  Okay.  All right.  But that was -- I thought I understood you to say that, that was information or discovery that the FBI had.  Is that not the case?

MR. MASSUCCO:  The FBI is our conduit.  They are the ones that get that information from the VIPD.  So, to the extent they provided it to us, that is correct.  Also, if I misspoke, there is also some phone records that were a result of some subpoenas that are included in this discovery as well.

THE COURT:  All right.  Okay.  Well, we look forward to that then.

And if the defense is somehow feeling that they have not received all discovery as promised or as was suggested by government, then certainly advise the Court.  One thing to keep in mind is that this case is going to keep moving forward, and the only way it's going to move forward, it seems to me, is to make sure that we have certain guideposts, milestones, discovery being the key one at this stage of the proceeding because everything else flows from it.

So, you know, I will inquire or ask the government to inquire if there is any other accommodation at Guaynabo that can be made because it seems to me if a defendant wishes to look at discovery and can only have about one hour in a day to look at it, given the volume of discovery here, that could make full appreciation of the discovery, something that's difficult for each defendant.

I'll ask the government to look into that and see if Guaynabo could make some other accommodations to afford the defendants, I guess, more time with the discovery, keeping in mind that any segregation rules that might be in place, or any separation orders that might be in place.  I'll ask the government to advise the Court on the ECF System Monday by 3 p.m.

And then, I'll also encourage the defense counsel to make such inquiries and efforts as appropriate to find out if there are some accommodations that Guaynabo can make.  I think, earlier, off the record, Attorney Diaz had indicated that the attorney/client interview room may be available on certain instances.  I don't know if there is some other accommodation or if that is even an available one.  But to the extent it is, I'll just ask Counsel to make such inquires with Guaynabo. And if there is a need for the Court to intervened, then certainly petition the Court and the Court will promptly look into it.  But I just urge the parties to move with diligence, all right?

Anything else for the good of the order from --

MR. GOLUBITSKY:  I just wanted to make the court aware of one issue regarding discovery while we're on the record, which is that my client has informed me that he does not know how to use the computer and,

therefore, he is unable to review any of the discovery, even as provided.  I am working with the discovery coordinator to figure out if there is some solution that we can propose to work around this.  So, I will have an update for the Court on this issue.  Since we're on the record now, I wanted to advise the Court of this problem.

THE COURT:  All right.

MS. DUDLEY:  Excuse me, Your Honor.

THE COURT:  We will certainly make such -- I'm certainly interested in finding out whatever you have to say.  Just file it on the record.

Is that something that defense counsel has had an issue with, with respect to their clients?  Attorney Dudley.

MS. DUDLEY:  I have been asked to state on behalf of Robert Brown that he also does not know how to use a computer, and that he can only access the information with the assistance with his counsel.

THE COURT:  Okay.  Let me ask defense counsel, to the extent you encounter the problem, perhaps one of the first things I might want to do is ask the coordinating discovery attorney, who the Court had involved in this case, to first make the effort to see if there is some way that that deficiency can be

addressed, and then we can go from there.  But it seems to me that, you know, it's an obstacle but not an insurmountable one.  It seems to me that the other option would be to present everything in paper, which I don't think is a practical or workable solution in this case.  So, digital review is something that's going to be essential here.  And to the extent there is a learning curve, I would urge defense counsel to certainly make every effort to see if the coordinating defense attorney can work with that little deficiency and see if we can overcome it.  All right, Attorney Golubitsky?

Someone has on their phone.  It's not on mute, and I'm hearing background, so.

MS. EDWARDS:  Your Honor.

THE COURT:  Yes.

MS. EDWARDS:  There is an omnibus hearing set for November 19th, but I'm not aware of any outstanding motions that would require an evidentiary hearing at this point.  The Marshals have asked who do they need to bring over for the hearing.  So, to the extent that the Court is going to keep that date --

THE COURT:  Hold on one second.  For the folks on the line, since we're trying to keep a record of this, if your phone isn't muted then we hear all of your

conversations, and we also hear all of the background noise. It makes it a little more challenging for the court reporter here and also interrupts your brothers and sisters who are in chambers. So, I'd ask you to please mute your phones to the extent you have other people or other noises around.

Go ahead, Attorney Edwards. You were mentioning something about a date for an omnibus hearing. What's the question?

MS. EDWARDS: Whether the Court is going to hear it without there being any outstanding motion. To the extent that the Court is inclined to do so if it could indicate which defendants need to be present, or is it just to assume all of them need to be here?

THE COURT: All right. Well, I don't know if there is going to be -- there seems to be there would have been a motions cutoff deadline, correct?

MS. EDWARDS: Correct.

THE COURT: All right. And I don't know what the status of the motions are right now, but we'll look at that and we'll see. But certainly the effort is to make sure that everyone is in a position where they -- to the extent defendants needs to be here they are here, the Marshal need to know, and the Court is aware of that. So, we'll look into that.

MS. EDWARDS: Okay.

THE COURT: All right. Anything else that we need to put on the record with respect to that?

MR. MASSUCCO: With respect to the severance and the date that the Government put out for the Court to consider, I want the Court to know that prior to the hearing I polled defense counsel, all defense counsel present, not necessarily those on the phone, but I had independent conversations with those on the phone as to when they thought, given from course of discovery and the complexity of this case, would be the earliest date that a trial would be available, not just the government but also the defense. That's where I got the June 1 date. It wasn't just simply a date that I thought would be convenient for the government. It was a date based on my discussions with the defense counsel around the table and those on the phone.

THE COURT: I can appreciate that. The Court certainly appreciates that. The Court's concern, though, just so it's very clear is, I don't want the United States to be in a position where it is unilaterally determining when it provides discovery because it's such a driver from the trial date, it's such an essential thing for the defense to have. And the Court has to make sure the defendants have

everything.  And that's why we've gone through all these logistical maneuvers to make sure there is a coordinating defense attorney, to make sure that there are orders, to make sure defendants can have everything, make sure there are dialogues with the folks at Guaynabo.  So, when the United States decides that it's not going to do something in accordance with a court order, or decides it's going to produce discovery in a manner that has another thrust, that gives the Court great pause because the Court is well aware it is a driver.  In fact, I will say this.  It is the thing, the single most severe thing that affects just about every trial that we have had in this District, the United States' decision to unilaterally decide how and when it will provide discovery.

And even in this case, with the Court's intervention, the coordinating defense attorney, the Court's expectation and hope is that the United States will do what's required since when an indictment is filed it is cloud over a defendant's head.  Every defendant is entitled to a speedy trial, whether it is a complex case or not.  And it's not for the United States to unilaterally determine we will do this because it is convenient to us or we will dribble out discovery in this manner.

So, I hope we can proceed in a manner where everyone is working in the same direction, and defense certainly is -- the defendants' rights are protected.

All right.  Thank you, Counsel.  Off the record.

[Matter adjourned at 11:51 a.m.]

- - -

CERTIFICATE

This document is hereby certified to be a true and accurate transcript of the foregoing proceedings.

/s/ *Persha Stoutt-Warner*
PERSHA STOUTT-WARNER, RMR  November 11, 2019
Official Court Reporter