IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

- - -

UNITED STATES OF AMERICA,              )
                                       )
                  Plaintiff,           )
                                       )
vs.                                    )   CRIM. NO. 18CR0030
                                       )
PAUL GIRARD, SHAQUAN PRENTICE,         )
ROBERT BROWN, WAHILLI JAMES,           )
SHAQUIELLE CORREA, JAMES CRUZ,         )
KAREEM HARRY, TYLER EUGENE,            )
ETHERNEAL SIMON, SHERMYRA GUMBS,       )
and WAYNE BELLILLE,                    )
                                       )
                  Defendants.          )
_____)


REPORTER'S TRANSCRIPT

SHOW CAUSE HEARING

November 14, 2019

---

BEFORE:        THE HONORABLE CURTIS V. GOMEZ
               District Judge

APPEARANCES:   OFFICE OF THE UNITED STATES ATTORNEY
               **BY: GEORGE ANDREW MASSUCCO, AUSA**
               **MEREDITH J. EDWARDS, AUSA**
               5500 Veterans Drive, Ste. 260
               St. Thomas, VI 00802-6424

               (For the Government)




COURT REPORTER:   PERSHA STOUTT-WARNER, RMR
                  Official Court Reporter
                  Virgin Islands District Court
                  St. Thomas, Virgin Islands

PROCEEDINGS:

[Court called to order at 9:03 am.]

THE CLERK:  United States of America versus Paul Girard, Shaquan Prentice, Robert Brown, Wahilli James, Shaquielle Correa, James Cruz, Kareem Harry, Tyler Eugene, Etherneal Simon, Shermyra Gumbs and Wayne Bellille.

MR. MASSUCCO:  Good morning, Your Honor.  On behalf of the United States, AUSA Andrew Massucco.

THE COURT:  Okay.  Good morning, Attorney Massucco.  Okay, we're here for a hearing to give you an opportunity to be heard.  Attorney Massucco, you want to be heard?

MR. MASSUCCO:  That's fine, Your Honor.  Is the Court prepared?  Should I come to the lectern?

THE COURT:  Yes, come to the lectern.

MR. MASSUCCO:  May it please the Court.  Good morning, Your Honor.

THE COURT:  Good morning.

MR. MASSUCCO:  First of all, I would like to provide the Court -- well, although I'm not sure specifically what questions I'm supposed to be answering, I guess the most obvious question is, do I feel that any of my behavior from the previous comments with the Court raised, rise, rose to the level of

contemptuous behavior?

THE COURT:  Well, remember, it's not just contempt.  I said "inherent authority" to sanction you.

MR. MASSUCCO:  Yes, Your Honor.  And I would submit to the Court that any of my actions, be it on the off-record conference that we held with Your Honor, I certainly didn't intend to display any contemptive or irreverent behavior in that.  And if that was the way it came across, I can only say that that was certainly not my intention.

THE COURT:  All right.  What was your intention?

MR. MASSUCCO:  I think the Court has known me for the last year and-a-half, approximately, and knows that I'm a staunched defender of my cause.  And I think that my only intent was to convey my concerns with the Court as to the scheduling of this case, and at no point did I mean to suggest it, that I was the person who knew the most about it.  I was simply trying to convey what my concerns were.

THE COURT:  But, Attorney, I thought you said -- what was it that you said about the people in the room?

MR. MASSUCCO:  I'm sorry, Your Honor?  Are you speaking --

THE COURT:  No.  What was it that you said about the people in the room?

MR. MASSUCCO:  I was -- you're speaking about the conference we had off the record, Your Honor?

THE COURT:  Correct.  Yes.

MR. MASSUCCO:  I made reference to the fact that I thought that I had more experience trying these types of cases than anybody that was present on that conference.

THE COURT:  Go ahead.

MR. MASSUCCO:  But my point is, Your Honor, that that -- it certainly wasn't my intent to offend the Court or any of the members present.  Once again, I submit to the Court that I was only trying to express my concern, maybe in a very funzzee {phonetic} or inappropriate way, but it certainly was not an intention.  And to the extent that the Court found that offensive, I sincerely apologize.

THE COURT:  Let me ask you to pull out the Elmo.  Attorney Massucco, did you have a chance to look at the transcript?

MR. MASSUCCO:  I did, Your Honor.

THE COURT:  Okay.  We're going to put that up.

[Pause.]

MR. MASSUCCO:  Your Honor, I have a copy, if

you would like me to get that.

THE COURT:  All right.  You can get it.  Yes, if you can turn to Page 7.

[The attorney complies with the request.]

MR. MASSUCCO:  Yes.

THE COURT:  Okay.  Put it on the Elmo.

[The attorney complies with the request.]
We must have different transcripts.  Okay.  All right.
We'll get the correct one.  I think I've got a --

MR. MASSUCCO:  Judge, are you referring to the portion where --

THE COURT:  I'm trying to get to the portion where the Court was trying to speak and you kept speaking over the Court.

MR. MASSUCCO:  I believe that was Page 8, Your Honor.

THE COURT:  That's it.  All right.  Tell me, what is it do you think is going on here?

MR. MASSUCCO:  Judge, honestly, I was just trying to do two things; I was trying to make my point to the Court and trying to make a record in this case.  And while I understand that you said the word "Attorney", so this was a sentence that didn't flow, Your Honor, and I did speak over the Court.  And I do apologize.

THE COURT:  All right.  There were multiple occasions where I told you, you could make a record.

MR. MASSUCCO:  I understand --

THE COURT:  Tell me what was the point of that.

MR. MASSUCCO:  Your Honor, I can't defend the intensity, so I'm not going to try to suggest that there was a reasonable explanation for that.  I do know that at some point, when I continued to talk when the Court was talking, the Court advised me that if I continue to talk I would be held in contempt, at which point I stopped.

THE COURT:  Right.  That was at the end.

MR. MASSUCCO:  Yes.

THE COURT:  But if you go through it, you will see multiple occasions where I'm trying to get you to, I guess, stop.

You can turn to the next page.  Tell me, what did you understand when the Court said you can make your record, and I will give you an opportunity to do that in writing?

MR. MASSUCCO:  Your Honor, I believe it speaks for itself, what your explanation was; although, I think I had it -- I was attempting to try to put something on the record while you were speaking, Your Honor.  And to the extent that that was inappropriate, I was simply

trying to say that I wanted to make a record. And once again, it was not my intention to speak over the Court. I was mid-sentence in some of that.

THE COURT: All right. Well, let me ask you. What do you think the Court should do?

MR. MASSUCCO: Well, I think the Court has done what's appropriate, Your Honor. You had the questions as to whether or not my behavior was contemptuous and irreverent. I think it's appropriate for the Court to question me as to that, find out what my intentions were. I submit to the Court that, once again, I was -- that certainly was not my intention. And, ultimately, in this exchange here, the Court provided me with a warning. And I was bordering on what is considered contemptuous behavior, at which point I seized to talk as the Court instructed. I think that that, at that point, shows my level of contrition and the fact that I recognized the Court's frustrations.

THE COURT: All right. Well, I agree. I don't think that contempt is appropriate here. But let me ask you what you think the Court should do, given its inherent authority, to sanction behavior that might be contumacious?

MR. MASSUCCO: I would simply ask that the Court lead me with a stern warning, as it's doing now.

And I would ask the Court not to provide any sanctions. It's not -- I don't think it would rise to the level of a sanctionable-type of a conduct, Your Honor.

THE COURT:  Well, I think we've had this sort of behavior before in the court, and the Court hasn't simply just walked away from it.  It's rare that it happens with the United States, but it's something that the Court has dealt with before.  So, I want to give you every opportunity to be heard on what you think happened and what you think ought to happen to the extent there is sanctionable conduct.

So, have you said everything you feel you want to say?

MR. MASSUCCO:  Your Honor, I certainly convey to the Court that it was not my intention to commit any type of sanctionable conduct.  I would certainly -- I would submit that in hindsight we tend to do things and go back in time -- and, probably, I would have done this differently in that exchange, those two exchanges that are on the record.  It was not my intention to speak over the Court.  And I would just simply say that, as for that type of behavior, that the Court is considering sanctions, I would only ask that the Court not impose sanctions as it does have a far-reaching effect, not only on this court proceeding, but also an a career for

15 years that I've not been the subject of this type of reprimand.  I think that my career to the Department of Justice, my work that I've done on behalf of the government, certainly does deserve some kind of consideration.

THE COURT:  Well, let me make it clear.  I'm not going to hold you in contempt, but the question is just inherent authority.  Is that something -- does your petition apply?

MR. MASSUCCO:  I'm sorry, Your Honor?

THE COURT:  That is, inherent authority.  You were mentioning about your career.  Does inherent authority sanction have the same impact as if the Court had held you in contempt?

MR. MASSUCCO:  I think that any action by the Court to serve as some kind of a reprimand, particularly sanctioning, would have some kind of effect on my career.  And I certainly don't think that the exchange that we, that we had in chambers on that day rises to the level of something that should have that type of overreaching effect.  I think that this was an exchange over the course of maybe two or three minutes.  And perhaps, I was -- perhaps, I didn't heed the Court's initial warnings to stop.

And so, I would just simply submit to the Court

that to the extent I did something that was inherently contumacious, it was not my intention.

THE COURT:  All right.  Well, you know, the Court just wants to be evenhanded.  I'm sure that you are probably aware, or might be aware of this Court's sanctioning witnesses who simply talked over the Court before in a case in which the United States prosecuted -- that was the Red Ball, I think it was the Red Ball case -- and a witness simply talked over the Court in a way that was certainly contumacious.  And I believe the United States in that case suggested that sanctions were appropriate.  It was something that occurred in the Court's presence, and so, that witness, I think, was in the Marshals' lockup until he wrote a check for his conduct.

But the United States, if I recall correctly, I think it was Attorney Smith who was the attorney, certainly pressed for -- we found out that that conduct should not go unpunished.  So, you know, I'm just wondering, is there a different standard when it's an attorney where the Court repeatedly is saying, "Attorney," "Attorney," "Attorney," "Attorney," on numerous occasions, and the attorney just seems to want to go on and on, notwithstanding the Court's clear suggestion that pause ought to be the order of the day?

MR. MASSUCCO:  Once again, Your Honor, I would submit to the Court that these two exchanges, at least those that I'm referring to on Page 8 and Page 9 of this transcript, they happened over a very short, short period of time, and when the Court did give its warning that my further comments could result in contemptuous findings that I certainly stopped.  I don't -- I wasn't there for the case you're referring to.  I've never heard of it.  And I'm unaware of any sanctions of the behavior of the witness that you're speaking about.  So, I can't compare my exchange with the Court to that case because I'm not familiar with that.

I can only say that I believe that sanctioning would be an extreme measure in this case, and I personally don't feel it is warranted.

THE COURT:  All right.  Well, I'll certainly give you an opportunity, if you feel you need it.  Let me know what you think is appropriate, other than a stern warning, because, again, the Court tries to speak precisely and tries to speak not in a rapid tone.  Every time I say, attorney, it's trying to get your attention to suggest that maybe you tone it down a bit.

And for the off-the-record section, it certainly seemed that you were not inclined to.  And when we were on the record, you certainly seemed that you were not

inclined to. I don't think the Court should be in a position to say you may be held in contempt before an officer of the court decides, well, now it's time to be quiet. And that's precisely what happened here.

So, I think to be fair, because you raised a certain concern, and certainly the Court doesn't want to do something that is unduly oppressive, I'll give you an opportunity, if I wish to have it, to submit any document you feel is appropriate for the Court to consider. But I will tell you this. It is troubling for me to have the US on one hand saying a witness ought to be sanctioned, and that person should not escape sanction for something that was less egregious than this, and that an officer of the Court to say, well, this isn't sanctionable because it occurred over two minutes.

I think it misses the entire tone and it misses what preceded, which was the off-the-record section, which you wanted to put on the record. Did you put -- did you file something putting that on the record, whatever you wished to do?

MR. MASSUCCO: Honestly, Your Honor, on the way to this hearing, the matter of sanctions and contemptuous behavior was resolved before I placed any of my interpretations at the off-the-record meeting.

THE COURT: All right. Well, again, as I said, I'm not going to hold you in criminal contempt. The Court is not intending to do that, neither do a civil contempt. This is really just a question of the Court's inherent authority, which I'm pretty sure Judge Lewis has exercised very recently in her court for not quite this type of conduct and not involving the United States. But I certainly have some pause because of what you said about your career. The Court doesn't want to do anything that will be unduly oppressive. But a stern warning, I question whether that's adequate, especially in light of what the government itself has asked for with a witness who didn't do something like this. And, particularly, given the tone of this.

As you know, from time to time in this case we have off-the-record discussions. It usually proceeds in a very cordial manner. I always turn to the United States first, hear what the United States has to say, hear what the defense has to say, then with the United States' permission then we discuss things that have to deal exclusively with the defense and, that is, with the defendants alone in matters that only implicate work product or attorney/client privilege, or other ex-parte things, usually surrounding around payment of defendants. But usually those exchanges are cordial.

This was not.  And this certainly took a turn from the very beginning.  Because as, you know, you're the first person I turn to, to sort of set the tone, which was certainly set when you spoke.

So, if you want more time to submit something on what you think is appropriate -- but I will assure you, I don't think a stern warning is appropriate.  You know, when we were off the record I thought you had an opportunity to tone it down.  You didn't.  When we were on the record, you simply refused to yield to the Court on numerous occasions.  That's why I've had the transcript there.  And, really, you just can't give as much spirit to what happened in the transcript.  The transcript, I think, is pretty revealing.  When I say, Attorney, it's usually a chance I'd like to speak.  And I think you know it because you've been before me before, and you simply refused to yield.

When I said you could put it on the record in any manner you chose, you could have put in as an order, as a notice, whatever you chose to label it as.  I said, you could put it in writing.  You would have your opportunity.  Your response was, I want to do it now, and then you proceeded to try to do that, now.

That is -- a stern warning is not good enough.  So, if you want more time, then you can certainly -- if

there are other considerations you wish for me to consider, something that will not have some effect, as you say, on your 15 years or -- I forgot how you referred to it -- then you can certainly submit that to the Court and I'll happily consider it.  But a stern warning, I don't think, is enough.

MR. MASSUCCO:  Can I ask the Court --

THE COURT:  Especially since what you did was at a time when, I think, you also had junior counsel there from your office, setting a remarkable example for whoever was there from your office, and also the other 11 parties who were present there.

So, yes, go ahead.

MR. MASSUCCO:  Can I ask the Court what the punishments would be, the Court would be considering? Because I'm not sure what to ask the Court not to do if I don't know what the Court is considering doing.

THE COURT:  Well, I don't think -- I'm not going to ask you to do something where you're thinking it's some binary inside of this or that.  I'm offering you an opportunity to tell me what you think ought to be done.  You know, you said a stern warning.  I think that's inadequate.  If there is some other thing you wish to consider, you mentioned your career, and to the extent you're saying that something might have a

deleterious effect on your career, then perhaps, you might want to think about what might be appropriate that won't have some deleterious effect on your career.

MR. MASSUCCO:  Well, Your Honor, I think the finding of any sanctionable conduct would have a deleterious effect on my career, as this matter has already been referred, pursuant to a mandatory full process to the Office of Professional Responsibility. Just the simple word of "contempt" of an Assistant United States Attorney, as required, that my office send an inquiry to the Office of Professional Responsibility for a review, an internal review, and that could have an extreme deleterious effect on my career.

THE COURT:  Well, that's why I focused on the word "contempt".  I said I'm not going to hold you in contempt.  But if that's, just to mention, that is something that I don't know if we can get around that. But that's why the Court's Order said for you to show cause why you should either be held in "contempt and/or sanctioned pursuant to the Court's inherent authority" to do so, because the Court can proceed under contempt proceedings, civil or criminal.  Criminal, it could be a summary for something certified to have occurred in the presence of a judicial officer.  I'm not inclined to go down that road, nor civil.  So, contempt is off the

table.  This is just inherent authority to manage the conduct of court proceedings.

I don't know if you've looked into that, or if it makes a difference, but I'm certainly willing to give you the opportunity to.

MR. MASSUCCO:  But, once again, Your Honor, I'm not sure if what I'm asking the Court not to do and what I -- in other words, I don't know what the available --

THE COURT:  Well, I'm not asking you to tell me what I can't do.  I'm asking you to -- I'll give you an opportunity to say what should happen beyond a stern warning, as you put it.

MR. MASSUCCO:  And once again, out of ignorance, but these matters are new to me, and outside of a stern warning I'm not sure what I could suggest to the Court.  I mean, are we talking -- is this a monetary fine?  Is this, you know, community service?  Is this teaching a class?  I mean, I don't know.  I'm at a loss as to what I can suggest to the Court outside of the warning, which was what I offered to the Court.

THE COURT:  That's what I'm gathering, you're at a loss, so I'm giving you an opportunity, if you wish, to avail yourself of the opportunity, to review what might be some other appropriate measure that won't affect you.  If you want to, it's fine.  If you prefer

for the Court just to impose whatever measure the Court thinks is appropriate, one of the options would be to do what the Court has done in other cases, which could include some monetary sanction.

But if you wish to review and think about other things that might be to your benefit, I'm giving you that opportunity.

MR. MASSUCCO:  Well, I appreciate the Court's indulgence, Your Honor.

THE COURT:  All right.  Well, why don't we take a break, and I'll give you a moment to think about that. If you wish to present the Court with some other information or some other options, that's fine.  You know, the Court has certainly imposed monetary sanctions, I think, just in about every instance where there has been conduct like this.  I'm sure you've read some of the VI Supreme Court cases, including the one including Attorney Sheesley, which is not binding on this Court, but it certainly talks about respect for the Court and what can happen when an attorney is contumacious.  But it provides recent guidance in this jurisdiction.  I'm sure you've looked at the 3rd Circuit case; I'm sure you've looked at the US Supreme Court chambers, you know, what a court can and cannot do.

I am saying that there is a wide range of things

that the Court can do.  You raised something; I have pause.  I want to give you an opportunity to consider, since the Court has very wide discretion on what it can do.  A stern warning, I don't think is enough, though.

So, you can certainly submit and suggest other things, if you wish to.  In fact, I think I'm going to give you that opportunity of time to think about that.  How much time would you like for that?

MR. MASSUCCO:  Judge, I guess I'd like until Wednesday of next week.

THE COURT:  All right.  Well, let me look at the calendar and see what we have on.  I believe we have a trial next week, among other things.  But I'm certainly going to give you some more time.

All right.  I'll take that into consideration.  Is there anything else you want to put on the record?

MR. MASSUCCO:  Judge, I just -- once again, it certainly was not my intention.  I think sometimes when I speak the 11-year-old version of me comes out, and that sometimes interferes with the message I'm trying to convey.  And certainly, I certainly, I didn't mean to convey any contumacious or irreverent behavior.

My only pause is that I don't think a financial sanction in this case would be an appropriate remedy, because I don't think it remedies the underlying

conduct.  I think the Court could try to frame something that would make me understand the Court's position on my behavior and what it was that I did wrong.  And I simply don't think writing a check is the way to resolve that. I think, I think, you know, this type of hearing where I can confront the Court, the Court can confront me as to the interchange and what happened, and why the Court thinks it was inappropriate in front of my peers, in front of my junior, in front of my boss, in front of members of the FBI, in front of the law clerks.  I think that that in and of itself has a dampening effect -- I'm sorry, the desired effect of making me recognize that the issues involved, when attorneys talk over the Court, as has happened in chambers the other day.  I don't think me pulling out my checkbook serves any other function, but it doesn't send a message home, such as a proceeding like this.

And I'm just, I'm -- although, ordinarily, a stern warning by the Court may not have the desired effect on a witness or on a defense attorney, I think bringing the Chief of the Criminal Division in front of his peers, in front of his co-workers, in front of his boss, in front of members of the community, in front of agents of the FBI, and providing this type of exchange does serve a purpose.  I think this is the purpose the Court

requested this show cause. And I think that to the extent that a stern reprimand on its face does not have that type of effect, according to the Court's practice, I think that this type of show cause hearing does have effect. So, I'm not sure what the additional remedies would be required to make me understand that what happened last Thursday was inappropriate in the eyes of the Court.

THE COURT: Is the suggestion that you are making one that you think would be appropriate in other instances where any party, or witness, or attorney decides to act in a contumacious manner?

MR. MASSUCCO: I think, Your Honor, it is a case-by-case basis, and I think it depends on many factors. But I certainly think that, one, it should start with a show cause hearing, and that would give the parties the chance to address the Court, the Court to address the parties and go from there. Once again, I think we offer different positions when we come before the Court. We have our client to represent, and we have different interests. And so, the interest that I have in representing the United States Government may be similar but different from the position of the defense attorney representing a client who is before this Court.

I can't say that we should all be treated the same

because I think we're all different.  And I think on a case-by-case basis the Court should use its discretion in formulating a proper course of action.

THE COURT:  All right.  Well, I'll take that under advisement.  I'm going to give you that time to think about any other appropriate measure that will achieve the objective here.  So, we'll reconvene in 15 minutes.

MR. MASSUCCO:  Thank you, Your Honor.

THE CLERK:  All rise.  Court stands in recess. Remain standing until His Honor leaves the courtroom.

[Recess at 9:33 a.m.]

[After recess, in open court at 10:13 am.]

All rise.  District Court is now in session. Please be seated.

THE COURT:  Okay.  All right, Attorney Massucco, you can come the lectern.  Attorney Massucco, what I think I'm going to do is give you an opportunity to submit whatever you feel you would like to advise the Court, inform the Court, of what you think appropriate measures ought to be taken in this case.  I'll give you till Friday, that is, tomorrow, by noon to do so, and then the Court will rule on the matter.

MR. MASSUCCO:  Thank you, Your Honor.

THE COURT:  All right, thank you.  Thank you,

Counsel.

THE CLERK:  All rise.  Court stands adjourned. Remain standing until His Honor leaves the courtroom.

[Court adjourned at 10:14 am.]

- - -

CERTIFICATE


This document is hereby certified

to be a true and accurate transcript

of the foregoing proceedings.


/s/ *Persha Stoutt-Warner*
PERSHA STOUTT-WARNER, RMR November 21, 2019
Official Court Reporter